# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL GOLDSTEIN,<br><br>    *Plaintiff*,<br><br>v.<br><br>ROXBOROUGH REAL ESTATE, LLC and BRENDA HOPKINS,<br><br>    *Defendants.* | Civil Action No:<br>15-cv-3835 (PGS)(DEA)<br><br>**MEMORANDUM AND ORDER** |

SHERIDAN, U.S.D.J.

This case returns to the Court after remand from the Third Circuit. *Goldstein v. Roxborough Real Estate LLC*, 677 F. App'x 796 (3d Cir. 2017). The Third Circuit vacated and remanded this Court's prior decision granting Defendants Roxborough Real Estate, LLC (hereinafter, "RRE") and Brenda Hopkins' motion compel arbitration. The Third Circuit held that there was insufficient evidence in the record for this Court to determine whether Plaintiff Michael Goldstein, *pro se*, proceeds on his own behalf, or on behalf of limited partnerships. *Id.* at 800. As such, the Third Circuit remanded this matter to the Court for additional fact-finding. *Id.* Specifically, the Third Circuit identified three issues for the Court to consider on remand: (1) whether Plaintiff proceeds on his own behalf; (2) if so, whether Plaintiff has standing to bring those claims under Pennsylvania law; and (3) whether the Court still has jurisdiction. Presently before the Court is Defendants' motion for judgment on the pleadings pursuant Federal Rule of Civil Procedure 12(c) (ECF 29).

1

**BACKGROUND**

This case arises from the failed real estate ventures of four limited partnerships during the real estate market collapse. In late 2006, Plaintiff and Richard Diamond, Defendant Hopkins' estranged husband, formed four limited partnerships to purchase properties in the Roxborough area of Philadelphia, Pennsylvania. (Amended Complaint at ¶ 22). The four limited partnerships were: 6112 Ridge, LP; 6210 Ridge, LP; 6212 Ridge, LP; and 6214 Ridge, LP. (*Id.* at ¶ 23). According to the Amended Complaint, the founding partners of the limited partnerships were Diamond, RRE, and Euthena, LLC, an entity wholly owned by Plaintiff. (*Id.*). RRE was responsible for managing the limited partnerships and their assets, as well as handling property management, renovation, and repair activities. (*Id.* at ¶ 24). Euthena was responsible for obtaining investors to fund the limited partnerships. (*Id.*). Defendant Hopkins was an RRE employee, responsible for managing its financial accounts and bookkeeping. (*Id.* at ¶ 12). In forming these limited partnerships, the parties also drafted limited partnership agreements, which contained a choice of law provision, agreeing to be governed by Pennsylvania law, and a dispute resolution provision, which states:

> (e) <u>Disputes</u> – Any controversy or claims arising out of or relating to this Agreement, or the breach thereof, shall be submitted to mediation using such system of mediation that is employed by the American Arbitration Association of the State of Pennsylvania. Any such controversy or claim that is not resolved by such mediation shall be settled by arbitration in accordance with the rules of the American Arbitration Association provided that the laws of Pennsylvania shall be applied in such arbitration, and judgment upon the award may be entered in any court having jurisdiction thereof.

(ECF No. 29-2 at 41, "Limited Partnership Agreement").

Each limited partnership purchased mix-use commercial properties at locations reflected by their name; for example, 6112 Ridge, LP purchased property at 6112 Ridge Avenue (hereinafter, "Properties"). (*Id.* at ¶ 22). In order to secure the purchase of these properties, 6112

Ridge, LP and 6210 Ridge, LP entered separate loans with St. Edmonds Federal Savings Bank for $280,250 and $251,250, respectively. (*Id.* at ¶¶ 28, 30). Similarly, 6212 Ridge, LP and 6214 Ridge, LP obtained loans from Stonebridge Bank for $425,000 and $320,000, respectively. (*Id.* at ¶¶ 33, 37). Plaintiff, along with Diamond and Michael Fitzgerald (another silent partner), was a personal guaranty for these two loans. (*Id.* at ¶ 52).

In late 2008, Plaintiff audited RRE's accounting, focusing on labor timesheets, receipts for material purchases, and the accuracy of quarterly financial and operational reports. (*Id.* at ¶ 42). According to Plaintiff, the audit revealed that RRE and Hopkins failed to maintain proper accounting of financial records and identified various discrepancies with its financial statements. (*Id.* at ¶ 43). Plaintiff claims that this misconduct caused the Properties to fall below market rate and forced the limited partnerships to sell the properties to their lenders. (*Id.* at ¶ 51). As a personal guaranty to the two Stonebridge Loans, Plaintiff claims the bank secured final judgments against him and Fitzgerald. (*Id.* at ¶ 52).

Plaintiff now claims to have assumed RRE's former role as general partner of all four limited partnerships, and has acquired all third-party limited partnership interest. (*Id.* at ¶¶ 14-17). Plaintiff also asserts that he has consolidated all ownership and guaranty related claims to himself. (*Id.* at ¶ 18). Given that the limited partnerships are insolvent and cannot afford legal counsel, Plaintiff asserts that the present matter is brought by himself, as a limited partner. (*Id.*). In his Complaint, Plaintiff alleges claims of fraud, breach of contract, negligent supervision, and detrimental reliance against RRE. He also asserts claims of breach of fiduciary duty and conversion against Hopkins. Specifically, Plaintiff claims that "RRE acted fraudulently, intentionally, and in bad faith, in negotiating and entering into the [a]greements" with the limited partnerships; and that RRE, as general partner, owed a duty of care to the limited partnerships and

3

breached this duty by permitting Hopkins to engage in tortious conduct against the limited partnerships. (*Id.* at ¶¶ 66, 79-80). He also claims to have detrimentally relied on assurances made in the limited partnership agreements to personally guarantee loans with Stonebridge Bank. (*Id.* at ¶¶ 84-86). As for Hopkins, Plaintiff claims that, as RRE's employee, she owed the limited partnerships a fiduciary duty of care and breached that duty by "routinely mismanaging the accounting and finances of the Limited Partnerships" and "skimming monies from the Limited Partnerships." (*Id.* at ¶¶ 90-93).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to dismiss a suit "[a]fter the pleadings are closed . . . but early enough not to delay trial." Fed. R. Civ. P. 12(c). "A Rule 12(c) motion for judgment on the pleadings is treated like a motion to dismiss under Rule 12(b)(6)." *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 324 (D.N.J. 1999). Under either rule, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Id.* For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp.3d 405, 407 (D.N.J. 2015) (*Ashcroft v. Iqbal*, 556, U.S. 662 (2009)). As such, "[a] complaint should not be dismissed unless it appears beyond doubt that 'the facts alleged in the complaint, even if true, fail to support the claim.'" *Syncsort Inc.*, 50 F. Supp. 2d at 325.

## ANALYSIS

I. <u>Whether Plaintiff Proceeds on His Own Behalf</u>

As a preliminary issue, the Court must determine whether Plaintiff pursues these claims on his own behalf, or on behalf of the limited partnerships. Defendants contend that because Plaintiff,

a non-attorney, pursues this cause of action on behalf of the limited partnerships, they are entitled to judgment.

"It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." *Dougherty v. Snyder*, 469 F. App'x 71, 72 (3d Cir. 2012) (quoting *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993)); *see also Goldstein*, 677 F. App'x at 798 ("Corporations, including partnerships, may appear in federal court only through counsel."). "The same applies to LLCs, even those with only a single member, because even single-member LLCs have a legal identity separate from their members." *Id.*

Here, the Court understands Plaintiff to assert that because he consolidated and assigned all limited partnership interest to himself, he himself has an interest in the claims alleged in his complaint. In support, Plaintiff identifies the declarations of three limited partners: Phyllis Goldstein, Michael Fitzgerald, and Reed Majors.[1] (ECF No. 32 at 14-20, "Limited Partner Declarations"). In Goldstein's and Majors' Declarations, they note that Plaintiff was unanimously elected as general partner, after RRE was removed and that both individuals assigned their entire membership and rights to the limited partnership to Plaintiff in February 2012. (*Id.* at 15, 19). Similarly, Fitzgerald declared that Plaintiff was unanimously elected general partner of the limited partnership after RRE's removal and that he assigned his membership and guaranty interests in his partnership to Plaintiff in January 2015. (*Id.* at 18). Defendants no longer contest Plaintiff's appointment to general partner; however, they contend that the declarations nevertheless fail to demonstrate compliance with the limited partnership agreements. (Def's Reply Br. at 2).

---

[1] Defendants challenged the reliability of these declarations, since they are not notarized; however, the Court is satisfied that these documents suffice as declarations under penalty of perjury pursuant 28 U.S.C. § 1746.

However, even assuming that the assigned interests were valid, it still remains that Plaintiff seeks to assert claims on behalf of the limited partnerships. With the exception of Count IV, which alleges detrimental reliance as a personal guarantor, the remaining claims against Defendants arise from rights and interests of the limited partnerships, not Plaintiff himself. However, any alleged tort or contractual duty owed by Defendants was owed to the limited partnerships, not to Plaintiff personally. And since these limited partnerships need to be represented by counsel, Plaintiff, a non-attorney, cannot bring these claims on their behalf. See, *Dougherty*, 469 F. App'x at 72. For this reason alone, Counts I, II, III, V, and VI will be dismissed.

II.     Statute of Limitations

As noted above, because Count IV arises from Plaintiff's performance as a personal guarantor to the Stonebridge loans, he may proceed *pro se* on his detrimental reliance claim. Therefore, the Court must next consider whether this claim is nevertheless barred by statute of limitations.

"Under Pennsylvania law, the statute of limitations starts running when the plaintiff's cause of action accrues." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 149 (3d Cir. 1998). Contrary to Defendant's contention, the Court construes Count IV as a claim for promissory estoppel, not fraud. *See Kraus Indus. v. Moore*, No. 06-00542, 2007 U.S. Dist. LEXIS 68869 at *23 n.6 (W.D. Pa. Sept. 18, 2007) (recognizing that a claim for detrimental reliance is an element to a cause of action for promissory estoppel); *see also Rost v. Nat'l R. Passenger Corp.*, No. 88-6598, 1992 U.S. Dist. LEXIS 13130, at *19-20 (W.D. Pa. Sept. 1, 1992) ("Detrimental reliance is a sine qua non of any promissory estoppel cause of action."). Under Pennsylvania law, a claim for promissory estoppel or detrimental reliance is subject to a four-year statute of limitations. *See Agere Sys. v. Advanced Envtl. Tech. Corp.*, 552 F. Supp. 2d 515, 523 (E.D. Pa. 2008); *see also* 42 Pa. Cons.

Stat. § 5525(a)(4) (stating that "an action upon a contract implied in law" must be commence within four years).

Here, when reviewing Plaintiff's Amended Complaint, the alleged conduct giving rise to Plaintiff's detrimental reliance claim arose no later than October 2008, when Plaintiff performed an audit of RRE's accounting, which purportedly revealed RRE and Hopkin's misconduct. As such, in order to be within the four-year statute of limitations period, Plaintiff would have had to file his Complaint by October 2012, almost two and a half years before Plaintiff filed his initial Complaint on May 1, 2015. (ECF No. 1-1). Therefore, Count IV falls well beyond Pennsylvania's four-year statute of limitations.

It is also worth briefly noting that the discovery rule does not save Plaintiff's claim. "Pennsylvania courts have applied the discovery rule to toll the statute of limitations," "[w]here a plaintiff could not reasonably have discovered his injury or its cause." *Knopick v. Connelly*, 639 F.3d 600, 607 (3d Cir. 2011). "Under the general formulation of the discovery rule, a claim will accrue when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." *Romero v. Allstate Corp.*, 404 F.3d 212, 222 (3d Cir. 2005). When considering whether the discovery rule applies, the Court "must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause." *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). Here, had Plaintiff been reasonably diligent, he would have realized, upon completion of his audit, that Defendants allegedly committed various forms of tortious and contractual injuries against him. However, despite discovering this alleged misconduct in October 2008, he waited almost six and a half years to pursue his causes of action. Plaintiff offers no explanation for this lapse of time and the Court finds no basis for which the discovery rule should apply. Therefore Count IV is dismissed as time-barred.

7

**ORDER**

This matter having come before the Court on Defendants' motion for judgment on the pleadings pursuant Federal Rule of Civil Procedure 12(c); and the Court having considered the submissions of the parties, and for good cause having been shown; and for the reasons set forth above;

IT IS on this 22nd day of January, 2018,

**ORDERED** that Defendants' motion (ECF 29) is **GRANTED** with prejudice. The case is dismissed.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.